IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LANDMARK REALTY, INC. | * |
| and | * |
| NEWDALE MEWS LTD. PARTNERSHIP | * |
| | * Civil No. JKS 10-278 |
| v. | * |
| GREAT AMERICAN INSURANCE COMPANY | * |

## MEMORANDUM OPINION

Plaintiffs Landmark Realty, Inc. and Newdale Mews Ltd. Partnership (Landmark) filed this action alleging breach of contract by Defendant Great American Insurance Company (Great American) and seeking a declaratory judgment to enforce an insurance policy. ECF No. 1. Pursuant to consent of the parties, this case was referred to me for all further proceedings. ECF No. 11. Presently pending are Defendant's motion to strike affidavit of Robert Bindeman, ECF No. 20, Plaintiffs' motion to strike affidavit of Gerald Provencher, ECF No. 21, Defendant's motion for summary judgment, ECF No. 15, and Plaintiffs' cross-motion for summary judgment, ECF No. 16. No hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, the motions to strike will be denied as moot, and the motions for summary judgment will be denied.

**I. Background.**

The following facts are uncontroverted unless otherwise noted. This case arises from a dispute over whether an insurance policy issued by Great American covers the repair of an apartment building owned by Landmark. The property is located at 3929–31 Newdale Road, Chevy Chase, MD. ECF No. 16, Ex. 1. It has two entrances with two ground floor units and two

second floor units per entrance. *Id.* When viewed from the front, the left-side entrance leads to the 3931 side of the structure and the right-side entrance leads to the 3929 side.[1] *Id.* Great American's statement of facts alleges, without supporting evidence, that the property is two separate buildings, but Great American does not dispute that the Policy, its own expert, and its interrogatory answers, treat the property as one single building, ECF No. 16 at Ex. 4, p. 19, Ex. 3 at 64, Ex. 19 at 4,[2] and that fact is accordingly accepted.

On July 7, 2009, the tenants in unit 1 notified Landmark that their floor had dropped. *Id.*, Ex. 9 at 2. On that same day, Landmark's engineer, Edward Perez, conducted a structural evaluation of the property. ECF No. 15, Ex. B at 1. Mr. Perez determined that the bedroom floor of unit 1 was bent downwards approximately 9 inches and was completely separated from the masonry wall. *Id.* He also observed visual irregularities in the kitchen of unit 3. *Id.* When investigating the cause of the damage, Mr. Perez observed considerable moisture and mold along the wood joists, and due to what he believed to be inadequate ventilation, extensive wood rot was found throughout the structural framing. *Id.* at 1-2.

On July 9, 2009, Great American's engineer, Phil Dawson, conducted an evaluation of the property. ECF No. 15, Ex. A. Mr. Dawson observed that the floor in unit 1 had dropped to 17 ½ inches, and observed cracks in the rear bedroom wall of unit 3. *Id.* Mr. Dawson determined that the damage was caused by the rotting of most, if not all, of the wood floor support joists which affected their load carrying capacity. *Id.* This rotting was caused by high levels of moisture, inadequate ventilation, no crawl space insulation, and no ground cover. *Id.*

---

[1] On the 3929 side, the ground floor units are numbered, from left to right, 3 and 1. On the 3931 side, the ground floor units are numbered, from left to right, 7 and 5.

[2] Great American's reply merely asserts that it makes no difference whether the property is one or two buildings. ECF No. 19 at 5.

Mr. Dawson concluded that the affected wood joists and supporting beams needed to be replaced. *Id.*

Great American's executive general adjuster, Jerry Provencher, issued two reports on July 9 and July 30, 2009. ECF No. 16, Exs. 9-10. Mr. Provencher notes evidence of flooring failure throughout the entire first floor and major new cracks in the central bearing wall. *Id.* He also observed significant uniform deterioration of all structural framing throughout the first floor that led to the floor giving way under foot. *Id.* Mr. Provencher concluded that the entire first floor needed to be replaced. *Id.*

Montgomery County authorities promptly ordered the evacuation of all tenants and condemned the property as "unfit for human habitation due to structural supports." *Id.*, Exs. 12-13. The Montgomery County Fire and Rescue also shut off all utilities and declared the property a dangerous or hazardous condition due to the "floor collapse on the first floor in building 3929 and 3931." *Id.*, Ex. 14.

At the time of the incident, the building was insured by Great American insurance policy No. PAC61475210001 CP (the Policy). ECF No. 16, Ex. 3. The Policy included "collapse" coverage and optional ordinance or law coverage. *Id.* Great American determined that the damage to the 3929 side of the building was caused by hidden decay and was covered under the collapse provision, but found that the damage to the 3931 side was excluded from coverage because it was not a collapse under the Policy, and fell within the Policy's exclusion of coverage for wet and dry rot deterioration. *See* ECF No. 15, Exs. A–B. As of June 10, 2010, Great American has paid $277,667.48 for the repairs to the 3929 side of the building. ECF No. 16, Ex. 18. Landmark now seeks damages in the amount of $341,418.52 for the repairs to the 3931 side of the building, loss of rental income, and extra expenses. *Id.* at 12.

**II. Standard of Review.**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962). The burden is on the moving party to demonstrate the absence of any genuine issue of material fact. *Pulliam Invest. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting the burden of raising a genuine issue of fact by substantial evidence to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A party who will have the burden of proof at trial, on the other hand, must make a showing sufficient to establish the existence of the essential elements of its claim or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). To defeat the motion, the party opposing summary judgment must submit evidentiary materials showing facts on the basis of which the finder of fact could reasonably decide the case in its favor. *Anderson*, 477 U.S. at 252. If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Id.*

When faced with cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment

as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). *See also havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed.1983)). The court reviews each motion under the familiar standard for summary judgment, and must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice and Procedure § 2720.

**III. Discussion.**

The parties agree that Maryland law governs the interpretation of the Policy. Under Maryland law, an insurance policy is interpreted using the same rules of construction that apply to any other contract. *Collier v. Md.-Individual Practice Ass'n*, 327 Md. 1, 5 (1992). Unlike most jurisdictions, Maryland does not follow the rule that an insurance policy is to be initially construed against the insurer. *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779 (1993). Instead, Maryland courts "interpret insurance policies as a whole, according words their usual, everyday sense, giving force to the intent of the parties, preventing absurd results, and effectuating clear language." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 495 (4th Cir. 1998). If the terms of the contract are clear and unambiguous, the language must be enforced as written. *Catalina Enter., Inc. Pension Trust v. Hartford Fire Ins. Co.,* 67 F.3d 63, 65 (4th Cir. 1995). If an insurance policy is ambiguous, however, the court can consider extrinsic evidence to determine the intention of the parties and will construe the policy "liberally in favor of the insured and against the insurer as drafter of the instrument." *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556 (2001).

**A. Collapse Coverage.**

The parties agree that all damage to the building was caused by wet or dry rot in the structural supports. ECF No. 15, Exs. A-B. However, Great American claims that only the damage to the 3929 side met the Policy's definition of a covered collapse, while Landmark contends that the entire building collapsed within the meaning of the Policy.

An insurer has the burden of establishing that the policy excludes a particular loss. *Nat'l Elec. Mfrs. Assoc. v. Gulf Underwriters Ins. Co.*, 162 F.3d 821, 824 (4th Cir. 1998). Once an "insurer successfully establishes that the loss is excluded, the burden shifts to the insured to demonstrate that the damage falls within an exception to the exclusion." *Bao v. Liberty Mut. Fire Ins. Co.*, 535 F. Supp. 2d 532, 535 (D. Md. 2008) (citing *Simkins Indus., Inc. v. Lexington Ins. Co.*, 42 Md. App. 396, 401 (1979)). Great American may obtain summary judgment only if it shows that no rational factfinder could conclude that the 3931 side of the building collapsed within the meaning of the Policy. Landmark, to sustain its motion, must show that no rational factfinder could conclude that the damage to the 3931 side of the building was not a collapse, or was not otherwise covered under the Policy.

The policy defines and covers "collapse" as follows:

a. With respect to buildings;

  (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

  (2) a building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

  (3) a part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

  (4) a building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of

6

cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one of more of the following:

*  *  *

(2) decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse.

ECF No. 16, Ex. 3 at 71. When a policy's definition of collapse is ambiguous, Maryland courts adopt a liberal version of the term, which defines collapse as "any serious impairment of structural integrity." *See Gov't Emp. Ins. Co. v. DeJames*, 256 Md. 717, 724 (1970). In *DeJames*, the policy covered "collapse (not settling, cracking, shrinkage, bulging or expansion) of building(s) or any part thereof." *Id.* at 718. Plaintiffs sought to recover under this provision after they observed an indentation near the floor of the basement wall and "hundreds of thousands" of cracks in the ceiling. *Id.* at 719. The court held that the policy's definition of collapse was ambiguous, that the ambiguity must be resolved in favor of the insured by defining a collapse as "any serious impairment of structural integrity," and that the trial court properly submitted the case to a jury. *Id.* at 720-25. This court examined the collapse definition at issue here in *130 Slade Condo. Ass'n, Inc. v. Millers Capital Ins. Co.*, No. CCB-07-1779, 2008 WL 2331048, at *5 (D. Md. Jun. 2, 2008) (unreported); s*ee also Malbco Holdings, LLC v. AMCO Ins. Co.,* 629 F. Supp. 2d 1185 (D. Or. 2009) (examining coverage under the same collapse provision). However, the dispute in *130 Slade* centered on the meaning of the provision covering "caving in."

7

The ambiguity present in this case is unlike that present in any case cited by either party. It results from the fact that Section E.1.a.(1) includes the "falling down or caving in of . . . any part of a building with the result that the building or part of the building cannot be occupied," which occurred here, and Sections E.1.a.(2) and (3), which exclude any part of a building that is standing, even if in danger of falling down, and which arguably apply to the 3931 side.

Landmark points to several exhibits in support of its argument that the entire building collapsed. The Montgomery County Fire Marshal's condemnation notice states that the entire first floor of the building collapsed. ECF No. 16, Ex. 14. Dan Kolakoski, the project manager for the company that restored the building, testified that "the drop in the floor was major on one side of the building and minor on the other side" . . . . *Id.*, Ex. 6 at 21-22; *Id.*, Ex. 7 at 3-4. Jerry Provencher, Great American's adjuster, observed significant flooring failure throughout the entire floor, and recognized that the flooring was unstable and gives when walked on. *Id.*, Exs. 9-10. Landmark's agent Robert Bindeman, who was present on the walkthroughs, observed flooring failure across the entire first floor "such that floor movement was evident along the entire first floor of the building ranging from about an inch on the left side of the building to nearly 2 feet on the right side of the building." ECF No. 16, Affidavit of Robert Bindeman.[3] It is undisputed that the entire first floor of the building had to be replaced.

Great American argues that, unlike the 3929 side, the 3931 side did not experience any floor deflection or abrupt falling down or caving in, and is still standing. Great American cites to the statement of Landmark's engineer Mr. Perez, who referred only to a collapse of a portion of the floor. ECF No. 15, Exs. A–B. Other than noting some cracks in the interior walls, Mr. Perez details a structural collapse only on the 3929 side of the building. *Id.*, Ex. B. Great American

---

[3] This statement was made on personal knowledge and thus is not subject to Great American's motion to strike. It is, however, not relied upon in this Memorandum.

contends that because the 3931 side is only in danger of falling down, and is still standing, the damage was not caused by a collapse but by wet or dry rot which is excluded from the Policy's coverage.

In sum, Landmark relies on Subsection (1)'s definition of "collapse:" "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." This definition of collapse clearly applies here because there is no dispute that the collapse of the 3929 part resulted in the entire building being unusable for its intended purpose.[4] Great American relies on Subsections (2) and (3), which would exclude the damage to the 3931 part because that part did not fall down or cave in, even if it was in danger of doing so, (Subsection (2)), and was still standing despite the unstable structural supports. (Subsection (3)). The conflicting results produced by application of these collapse provisions create an ambiguity which precludes the granting of summary judgment to either party.

### B. Ordinance or Law Coverage.

Landmark also contends that all damages are covered under the Policy's ordinance or law coverage. That coverage provides that when a building has sustained covered direct physical damage, Great American will pay the cost to demolish and clear, and the increased cost to repair, undamaged portions of the building, where such costs are incurred "as a consequence of enforcement of an ordinance or law." ECF No. 16, Ex. 3 at 79, 80. Landmark was ordered by the Montgomery County authorities to repair the entire floor and would be unable to obtain building or occupancy permits unless it did so. Landmark points to Section 22-18 of the

---

[4] Great American argues that "Building 3931" did not fall down or cave in. However, this property is one single building and it is undisputed that the 3929 part collapsed.

Montgomery County Code, under which it was required to comply with the Fire Marshal's condemnation notice, and Section 26-13 of the Montgomery County Code, under which the Montgomery County Department of Housing and Community Affairs condemned the building as unfit for human habitation. ECF No. 16 at Ex. 12.

Great American responds by noting that the ordinance or law coverage excludes any repair, replacement, or reconstruction due to "contamination by . . . wet or dry rot," or costs associated with any ordinance or law which requires the insured to "respond to the effects of . . . wet or dry rot." ECF No. 16, Ex. 3 at 80. Great American contends that the need to repair the floor joists was caused by the presence of wet and dry rot, which indisputably had been present for many years. Landmark's reply, noting that both the housing and the fire officials cited the lack of structural support in their orders, argues that the enforcement here occurred as a consequence of the collapse rather than the activity of wet or dry rot. This argument, however, requires a restrictive reading of a broad exclusion which contains no ambiguity. This building was condemned due to damage caused by wet or dry rot, an express exclusion from the ordinance or law coverage. The fact that the wet or dry rot caused a lack of structural support, which then justified the condemnation, does not create ordinance or law coverage.

## IV. Conclusion.

The case will proceed on the question whether the damage to the 3931 side of the building is covered by the Policy's collapse provision. At trial, Great American will have to overcome the rule that an ambiguity in the collapse coverage "is to be resolved against the company which prepared the policy and in favor of the insured." *DeJames,* 256 Md. at 720; *see also Dutta*, 363 Md. at 556. The question of damages, including Landmark's claim to lost rent for the entire property even if it is not entitled to recover repair costs for the entire property, is

dependent on resolution of the liability issues and similarly cannot be resolved on summary judgment.

In light of the denial of summary judgment as to liability and damages, Great American's motion to strike the Affidavit of Robert Bindeman, and Landmark's motion to strike the Affidavit of Jerry Provencher, will be denied as moot.

Date: December 3, 2010                                /S/
                                                                   JILLYN K. SCHULZE
                                                  United States Magistrate Judge